THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES WILLIAMS, Defendant-Appellant.

First District (1st Division)   No. 83—1619

Opinion filed October 21, 1985.

Jenner & Block, of Chicago (Richard T. Franch, Robert T. Markowski, and Barry Levenstam, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Karen C. Wirth, and Erin J. Jennings, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:*

After a jury trial, defendant, James Williams, was found guilty of murder and sentenced to 30 years' imprisonment. Defendant appeals, contending that (1) the trial court erred in denying defendant's motion to dismiss; (2) evidence of police conduct should have been presented to the jury; (3) the pretrial identifications of defendant should have been suppressed since he was arrested without probable cause; (4) he was unfairly surprised and prejudiced by the disclosure of the pretrial identifications; (5) improper evidentiary rulings by the trial court require reversal; (6) he was prejudiced by the comments of the prosecutors during the course of the trial; and (7) he was not proved guilty beyond a reasonable doubt.

On June 29, 1982, at approximately 7 p.m., the victim, Robert Love, was shot and killed in Brian's Lounge, a tavern located in Chicago. At the time of the shooting, there were approximately 20 people in the tavern, including a number of regular patrons.

At trial, Isadore Glover, the brother of the victim testified that on the afternoon of the day of the incident he and his brother were sitting on the front porch of their house. The defendant, known to Glover as "Bill," approached the porch and began arguing with the victim concerning a $10 debt the defendant owed the victim. The defendant was with a second man who was carrying a folding chair. The defendant punched the victim in the right side of his face and defendant reached for the folding chair. Glover, who was on crutches at the time, tossed his brother a crutch. At that point the defendant ran down the street, saying, "I will see you later." Glover and his brother returned to the porch, where they sat for about 45 minutes. The victim then left for Brian's Lounge. Glover stated that later that day he received a phone call he interpreted to be a threat on his brother's life.

Glover further testified that the morning following the shooting he had a conversation with a woman named "Pussycat," who stated that she was present at the time of the shooting and that the person who shot Robert Love was the defendant. The defendant was also

---

*Justice McGloon heard the oral argument in this case, and following his retirement, Judge Buckley was substituted, listened to the tapes of the oral argument and read the briefs and record, and concurs in the opinion.

known to her as "Bill." "Pussycat" further told Glover that she was familiar with defendant's family and because she was afraid she did not want Glover to reveal their conversation. Following this conversation, Glover met with the police and identified a photograph of defendant as the man who had been arguing with his brother. At a later date, Glover made an in-person identification of defendant as the man who had been arguing with his brother.

Emma Ginns testified that her nickname was "Pussycat" and that she had been at Brian's Lounge at the time of the incident and that she had a conversation with Isadore Glover the following morning. She stated that she told Glover that his brother had been shot but denied telling Glover that "Bill" had shot his brother.

Charles Clemons testified that he had been a regular at the tavern and was present on the day of the incident. He participated in a card game at the tavern and noted that the victim was getting ready to sit down at the card game. When the gunfire began, Clemons dropped to the floor. When he stood up, the gunman left and the victim was lying on the floor. He further testified that he viewed a lineup that consisted of five people. On the day of the lineup he could not positively identify the defendant as the killer but stated in court that the defendant was one of the people in the lineup.

Andrew Tucker testified that he was also at the bar on the day of the incident. He stated that upon arriving he entered a card game with Charles Clemons and others. The victim was standing behind the table awaiting his turn to sit down at the card game. Tucker was about to leave the table and had just bent over at the waist to pick his jacket up off the floor. While bent over he heard a shot. Before he could stand up, Tucker was grabbed around the neck from behind by the victim. As he tried to stand up he was brought face to face with the gunman who stood approximately six to eight feet away. As Tucker struggled to get loose from the grasp of the victim, several more shots were fired. As the victim's hold on Tucker weakened, Tucker fell face first to the floor. Tucker remained face down on the floor until the shooting stopped and then he ran out of the bar. Tucker identified defendant in police photos as well as in a lineup as the gunman. He further testified that he had attended grammar school with defendant and, as a result, he recognized defendant at the time of the shooting.

Prior to trial, a hearing was held on defendant's motion to quash the arrest and suppress the identifications of defendant. At the hearing, Margaret Russell, Emma Ginns and Carl Beasley, regulars who had been in the tavern at the time of the shooting, testified. Ginns

and Russell stated that they were questioned and intimidated by the police and that they were released only upon identifying defendant as the perpetrator. Ginns and Russell asserted that the police withheld bathroom and telephone privileges from them, they refused to feed them and they physically threatened them. In addition, Russell testified that she heard Carl Beasley "getting whipped" and Ginns stated that she saw a police officer kick Beasley in the groin area. Beasley testified that he was questioned by the police for a 24-hour period and that he denied seeing anyone shoot Robert Love.

■ Initially, defendant contends that the trial court erred in denying his motion to dismiss the information. Defendant's motion alleged that misconduct by both the police and the prosecutor denied him a fair trial. Defendant contends that the police coerced Margaret Russell, Emma Ginns and Carl Beasley into positively identifying the defendant after imprisoning and torturing witnesses over a two-day period. Further, defendant argues that the police mistreatment suffered by these three witnesses subsequently influenced other witnesses to testify for the State.

A trial court had the authority to dismiss an information upon statutory grounds or a clear denial of due process. (Ill. Rev. Stat. 1983, ch. 38, par. 114—1; *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244; *People v. Rivera* (1979), 72 Ill. App. 3d 1027, 390 N.E.2d 1259.) In *Rivera*, two witnesses alleged that police officers coerced them into testifying against the accused at a grand jury hearing. The court was fully aware of the accused's claim since the allegations of police misconduct were made at a hearing to quash the arrest and suppress the identification of the accused. The coercion was denied by the police officers. The court held that the accused failed to establish the due process violation with certainty and refused to dismiss the indictment. 72 Ill. App. 3d 1027, 1038, 390 N.E.2d 1259.

Similarly, in the instant case, the allegations of police misconduct were made at the hearing on defendant's motion to quash the arrest and suppress the identification of the defendant. The alleged coercion was completely denied by the police officers. The trial court heard the witness' testimony and denied the motion due to insufficient grounds to support and authenticate defendant's allegations. We find that there was no abuse of discretion on the part of the trial court since any due process violation was not established with certainty. *People v. Rivera* (1979), 72 Ill. App. 3d 1027, 390 N.E.2d 1259.

■ Defendant further claims that the State delayed in granting a preliminary hearing to defendant for a period of 21 days in order to create a case against him. A preliminary hearing should be performed

with reasonable promptness as determined by the facts and circumstances of the case. (*People v. Jackson* (1961), 23 Ill. 2d 274, 178 N.E.2d 299.) The defendant here was arrested on July 1, 1982, and a preliminary hearing was scheduled for July 6, 1982. On the State's motion the hearing was twice continued until July 21, 1982. The record does not indicate that defendant at any time objected to the continuances. We do not find the delay so unreasonable as to constitute error especially where defendant claimed no prejudice.

■ Defendant next contends that the trial court erred by excluding evidence of police misconduct at trial. Defendant argues that his rights were violated when the trial court precluded him from presenting evidence of police intimidation of Russell, Ginns and Beasley which resulted in their identification of defendant. Defendant further contends that the identifications made by Andrew Tucker and Isadore Glover and the testimony of Charles Clemons were the result of the police coercion of Ginns, Russell and Beasley. The trial court excluded the evidence of police misconduct since the identifications of defendant made by Ginns and Russell were not going to be introduced by the State at trial. The court stated that there appeared to be an independent basis as to what Beasley saw in the tavern at the time of the shooting. Beasley did not testify to any violence by the police nor did he make a positive identification of defendant.

The relevancy standard is used in determining the admissibility of evidence. (*In re Application of County Treasurer* (1973), 14 Ill. App. 3d 765, 303 N.E.2d 476.) The test for relevance is whether the evidence offered tends to prove or disprove a disputed issue. (*People v. Fair* (1977), 45 Ill. App. 3d 301, 359 N.E.2d 848.) The general rule is that the evidence must be confined to the point in issue. *People v. Wilson* (1948), 400 Ill. 603, 81 N.E.2d 445.

The issue in the case at bar was the reliability of the identification testimony of the witnesses. The State did not call either Emma Ginns or Margaret Russell as witnesses and their identification testimony never came before the jury. Defendant contends that because Ginns and Russell complained of police coercion, it is likely that Andrew Tucker and Isadore Glover were coerced by the police into identifying defendant as the killer. However, neither Tucker nor Glover complained of police mistreatment. Moreover, defense counsel never cross-examined Tucker or Glover as to whether they had been intimidated by the police. Under these circumstances, we believe the trial court was within its discretion in excluding any evidence of police misconduct at trial.

■ Defendant further contends that Isadore Glover's and Charles

Clemons' pretrial identification of defendant should have been suppressed because he was arrested without probable cause. At the suppression hearing in the instant case, Detective McCarthy, one of the arresting officers, testified that eyewitnesses to the shooting related to him that the gunman uttered, "I told you so," before shooting the victim with five bullets. Isadore Glover had given a statement to the police that on the afternoon of the shooting he witnessed a fight between the victim and a man known as "Bill." During the course of the argument, "Bill" shouted words to the effect that he would be back to get the victim. Following the shooting, Glover identified a photograph of the defendant as "Bill," the man who had fought with the victim.

Probable cause to arrest exists where the facts and circumstances known to the arresting officer are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766.) Evidence sufficient to convict is not required to support a finding of probable cause. (*People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605.) On review, the trial court's finding of probable cause will not be disturbed unless manifestly erroneous. (*People v. Borges* (1980), 88 Ill. App. 3d 912, 410 N.E.2d 1076.) It is our opinion that Isadore Glover's identification of defendant as the man with whom the victim had a previous altercation provided the sufficient probable cause to arrest defendant.

■ Defendant also argues that the pretrial identifications by Isadore Glover and Charles Clemons should have been suppressed because he was not represented by counsel. The right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against defendant whether by way of formal charge, preliminary hearing or arraignment. (*Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877; *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161.) Here, at the time of the identifications, no adversarial proceedings had been initiated against defendant. The police case was at the investigatory stage at the time of the lineup. Thus, defendant's right to counsel had not yet attached.

■ Defendant urges that he was unfairly surprised and prejudiced by the disclosure of the pretrial identifications of defendant by Charles Clemons and Isadore Glover and that a mistrial should have been granted. The trial court stated that it did not believe that the defendant was caught by surprise due to the extensive amount of discovery conducted by defense counsel.

The trial court has discretion in allowing the introduction of testi-

mony not disclosed where there is no showing of surprise or prejudice. (*People v. Ferguson* (1981), 102 Ill. App. 3d 702, 429 N.E.2d 1321.) A reviewing court will not reverse the trial court's exercise of discretion in the absence of a showing of surprise or prejudice to defendant. *People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029.

Prior to trial, the public defender, who initially represented defendant in the instant case, filed a motion for discovery requesting a list of witnesses that the State would call. The State's answer to the motion included the name and address of Isadore Glover. Later, subsequent counsel was appointed and was advised that all discovery had been turned over to defendant. Further, defendant's discovery included the police report which referred to Charles Clemons' unsuccessful attempt to identify defendant at a lineup. Under these facts, it cannot be said that defendant was unfairly surprised or prejudiced by the identifications of defendant by Clemons or Glover.

■ Defendant next contends that improper evidentiary rulings by the trial court require reversal. Prior to trial, defendant filed a motion *in limine* to prohibit the State from making any reference to defendant's prior conviction for voluntary manslaughter. The court ruled that reference to the previous offense of voluntary manslaughter was too similar to the murder charge defendant was presently charged with and would prejudice the defendant. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) The court, therefore, limited the State's reference to the prior conviction only as a "prior felony conviction."

A defendant's previous conviction can be disclosed at his trial for impeachment purposes if it is within 10 years following his conviction, unless the court determines that the probative value of the impeachment is outweighed by prejudice to defendant. (*People v. Axelson* (1976), 37 Ill. App. 3d 566, 346 N.E.2d 24.) In the case at bar, by its ruling limiting reference to the prior conviction only as a "prior felony conviction," the trial court clearly had weighed the probative value of the use of the conviction against the prejudicial impact to defendant. The trial court recognized the danger that the jury could view the voluntary manslaughter conviction as propensity evidence since the charge in the instant case was murder and, by its instructions, the court avoided any prejudice to defendant.

■ Defendant also contends that the court should have granted a mistrial following testimony by Isadore Glover that Emma Ginns had told him that she was afraid to identify defendant as the murderer. Emma Ginns testified for the defense and denied seeing the shooting.

On cross-examination by the State she admitted being present in the tavern at the time of the shooting but denied having a conversation with Glover relating to the shooting. On rebuttal, the State called Isadore Glover and questioned him as to whether Ginns told him anything about defendant's family. He responded that "she was very familiar with the family and she didn't want me to say that she had saw me because she was very afraid at the time." The defendant then moved for a mistrial, alleging that the State had violated an agreement that they would not elicit testimony about witnesses fearing for their safety. The court ruled that the major portion of the testimony constituted impeachment of Ginns and ordered the remark regarding the witness' fear to be stricken and instructed the jury to ignore the statement.

The decision of whether or not to grant a mistrial is within the broad discretion of the trial court. (*People v. Watson* (1982), 103 Ill. App. 3d 992, 431 N.E.2d 1350.) That decision will not be disturbed on review unless the defendant establishes that he was prejudiced both by the comment complained of and by the denial of his motion for a mistrial. (*People v. Omatto* (1980), 88 Ill. App. 3d 438, 410 N.E.2d 588.) Any prejudice in the presentation of such testimony is generally cured by sustaining an objection thereto and instructing the jury to disregard. (*People v. Burnett* (1979), 74 Ill. App. 3d 990, 394 N.E.2d 456.) The purpose of the rebuttal testimony of Isadore Glover in the case at bar was to impeach Emma Ginns' prior testimony that she did not know who had shot and killed Robert Love and that she denied telling Glover that she saw defendant commit the murder. We find this was proper impeachment of Ginns' testimony. Moreover, any error was harmless in light of the admonition and instructions by the trial court. *People v. Burnett* (1979), 74 Ill. App. 3d 990, 394 N.E.2d 456; *People v. Gant* (1974), 58 Ill. 2d 178, 317 N.E.2d 564.

■ Defendant further argues that the trial court abused its discretion in admitting into evidence inflammatory photographs of the victim's body. We find no merit in this argument. Photographs, including gruesome photographs, are properly admitted where they are relevant to establish any fact at issue, even where defendant does not refute the victim's identity or his cause of death. (*People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 174, 104 S. Ct. 199.) Photographs may be properly admitted to corroborate testimony despite defendant's offer to stipulate as to matters shown by the photographs. (*People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771.) Further, the admission of photographs is a matter within the sound discretion of the trial court.

(*People v. Stocks* (1981), 93 Ill. App. 3d 439, 417 N.E.2d 1080.) The photographs of the victim were properly admitted into evidence here, since they corroborated testimony as to the cause of death, the number and location of wounds and the manner in which they were inflicted.

■■ We also find no merit in defendant's contention that he was denied his right to learn potential prejudices of jurors when the trial court refused to ask on *voir dire* 30 questions which he submitted to the court. The trial court excluded 19 of the questions ruling that they were too time-consuming, too broad, concerned matters of law, or were improper since they called for the subjective feelings of the jurors. Excluded questions concerned the jurors' attitudes regarding the State's burden of proof, the presumption of innocence, police brutality, prior jury service, the use of alcohol as well as the jurors' educational and military background and whether they had moved from a changing neighborhood. It is our opinion that the court's ruling was within its broad discretion in determining the scope of *voir dire*. *People v. Barnes* (1982), 107 Ill. App. 3d 262, 437 N.E.2d 848; *People v. Phillips* (1981), 99 Ill. App. 3d 362, 425 N.E.2d 1040.

■■ We consider next defendant's contention that he was prejudiced by the comments of the prosecutor during the course of the trial. Defendant argues that it was improper for the prosecutor in his closing argument to vouch for the credibility of Andrew Tucker, the principal identification witness. The prosecutor stated:

> "Now in terms of Mr. Tucker, he is obviously an important witness, he saw a lineup. Now this is one of the best lineups I have ever seen. It takes place in Cook County Jail where they obviously have a lot of people to choose from. I have seen lineups where there are only people, young people, tall people and short—."

The State maintains that these comments constituted a legitimate reply to defense counsel's statement in his closing argument that Tucker was pressured by the police to identify defendant as the murderer. We agree. We do not view the comments of the prosecutor as bolstering the credibility of Andrew Tucker. The statement focuses attention on the nature of the lineup rather than the witness who viewed it. Further, we believe the comment indicated the nonsuggestive nature of the lineup and was an appropriate response to defendant's argument that Tucker's identification was the result of police coercion. *People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546, *cert. denied* (1976), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1113; *People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.

■■■ Defendant further complains that he was prejudiced when the prosecutor referred to the telephone call received by Isadore Glover, following the death of the victim, as a "threatening" phone call. Defendant's objection to the remark was sustained. In an earlier ruling, the court ordered the content of this telephone conversation to be stricken from the record, but allowed the fact that a call was received by Glover to stand. Since the objection by defense counsel was sustained, the remark was stricken from the record, and the jury was instructed to disregard the comment, we find no error resulted. *People v. Hardy* (1979), 77 Ill. App. 3d 37, 395 N.E.2d 743.

Finally, defendant contends that the evidence presented at trial was unreliable and raised a serious doubt of guilt. It is well established that it is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or contrary to the verdict as to raise a reasonable doubt of guilt. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.) We view the evidence presented in the instant case as compelling. Andrew Tucker gave eyewitness testimony that, as he stood approximately six feet away, he saw the defendant murder Robert Love. His testimony was bolstered by the fact that he knew defendant prior to the commission of the crime. Isadore Glover identified defendant as the man with whom the victim had an argument the day of his death, which supplied the motive for the killing. Defendant does not point to any specific inconsistencies as casting doubt on the identification testimony.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.