THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
NATHAN L. LILLARD, Defendant-Appellant.

Fourth District   No. 4—89—0718

Opinion filed July 26, 1990.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

On January 11, 1989, defendant shot and killed Abera Miles. A jury convicted defendant of first-degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)) and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). Defendant appeals, arguing as follows: (1) he was denied a fair trial by the prosecutor's misstatement of the law during closing argument; (2) the trial court abused its discretion in admitting and allowing the jury to view two photographs of the victim; (3) the trial court's ruling on the State's motion *in limine* regarding testimony about cocaine found in decedent's possession denied defendant his sixth amendment right to present a defense; (4) the trial court abused its discretion by allowing use of a prior weapons conviction for impeachment purposes; and (5) the armed violence conviction must be vacated.

We affirm defendant's first-degree murder conviction and vacate the armed violence conviction.

Reasonable doubt is not an issue in this case. For that reason, only the facts concerning the issues raised by the defendant on appeal will be reviewed.

Vivian Reed testified defendant lived with her and her four children at 603 East Fairchild. Decedent, Abera Miles, was her nephew. This residence was the scene of the crime involved. It is clear from the evidence of the various parties that the defendant and the decedent were not good friends and had argued many times in the past. With respect to the source of one argument between the decedent and the defendant, on cross-examination, Vivian stated decedent had given a tape player to defendant. Defendant was supposed to pay de-

cedent $25 on January 12, 1989. According to Vivian, both men argued a lot. Defendant would always tell decedent to quit "disrespecting his house." Decedent always told defendant that it was decedent's house. Decedent called himself "Big Daddy Caine." However, Vivian did not know what the phrase meant. Defendant and decedent always argued so she did not take their argument seriously. Vivian further stated that after decedent said he was "Big Daddy Caine" on January 11, 1989, defendant said he was not having that stuff in his house.

Investigator Larry Rollins testified that defendant gave a tape-recorded statement on January 12, 1989. Officer Rollins testified defendant stated decedent said defendant owed decedent $25 for a cassette radio.

The defendant testified that while he and the decedent were in the house the defendant told decedent to come upstairs. The defendant told decedent to come in and shut the door. The two men talked about what "Big Daddy Caine" meant. Defendant told decedent he did not want "Big Daddy Caine" in the house. The two also discussed $25 which defendant owed decedent for a radio. Defendant said decedent said, "Well, you owe me some money for that Big Daddy Caine." And defendant stated, "Well, you'll get your money tomorrow, your $25 for the radio." Decedent had purchased the cassette tape player for defendant. Defendant was to pay him back on payday.

On cross-examination, defendant admitted he did not refer to "Big Daddy Caine" in his statement to the police.

Testimony of witnesses placed decedent unarmed at the bottom of the stairs when the shooting occurred. According to defendant, he and decedent were going down the stairs, decedent turned and charged up three or four steps. Defendant shot him, stating on cross-examination he did not see decedent carrying a weapon nor did decedent indicate he was carrying a weapon.

As rebuttal evidence, the prosecutor introduced defendant's 1985 conviction of unlawful use of a firearm by a felon.

The jury found defendant guilty of first-degree murder and armed violence. Subsequently, the court sentenced defendant to two concurrent 30-year terms of imprisonment.

During closing argument, the prosecutor used a chart to illustrate the elements of first-degree murder and the justification defenses. Initially, the prosecutor correctly stated the elements of first-degree murder and discussed the justification defenses. However, in talking about self-defense in relation to the first-degree murder charge, the prosecutor stated that once the jury had eliminated the possibility that defendant reasonably believed his actions were necessary for pur-

poses of first-degree murder, it could not go on to consider whether his belief was unreasonable, for purposes of second-degree murder. In rebuttal, the prosecutor made a similar statement. However, the jury received Illinois Pattern Jury Instructions, Criminal, Nos. 7.01A, 7.05A, and 7.06A (2d ed. Supp. 1987) (IPI Criminal 2d). Additionally, both attorneys and the trial judge stated the court would instruct the jury on the law.

Defendant argues, in essence, that the prosecutor's statement, the jury need not consider the unreasonableness of defendant's belief if it excluded "self-defense," so confused the jury that he was materially prejudiced and denied a fair trial. The State concedes the prosecutor misstated the law, but argues the error was cured.

■ Generally, a prosecutor's remarks in closing argument do not amount to reversible error unless they constitute a material factor in defendant's conviction or result in substantial prejudice to him. (*People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746; *People v. Burke* (1985), 136 Ill. App. 3d 593, 483 N.E.2d 674.) Although a misstatement of the law may constitute reversible error (*People v. Cobb* (1989), 186 Ill. App. 3d 898, 915-16, 542 N.E.2d 1171, 1183-84), the prejudicial effect of improper remarks is lessened by correct jury instructions (*Terry,* 99 Ill. 2d 508, 460 N.E.2d 746; *Burke,* 136 Ill. App. 3d 593, 483 N.E.2d 674).

Section 9—1(a) of the Criminal Code of 1961 (Code) states:

"First degree Murder ***. (a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another ***." (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).)

Section 9—2(a) of the Code states:

"Second Degree Murder. (a) A person commits the offense of second degree murder when he commits the offense of first degree murder as defined in paragraphs (1) or (2) of subsection (a) of Section 9—1 of this Code and either of the following mitigating factors are present:
***

(2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but

his belief is unreasonable." (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a).)

Section 7—1 of the Code states:

"Use of Force in Defense of Person. A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." Ill. Rev. Stat. 1987, ch. 38, par. 7—1.

■ The disputed portion of the prosecutor's closing argument is confusing and erroneous. The prosecutor initially argued that if the jury determined defendant did not have a "reasonable belief" that it was necessary to defend himself, then his actions were not justified. The prosecutor, however, went on to argue that if the jury found no justification for purposes of first-degree murder, there was no possibility of finding second-degree murder, because it could not consider the unreasonableness of defendant's belief. The jury must consider the reasonableness of defendant's belief that his action was necessary to defend himself if defendant presents this defense. The prosecutor compounded the error by further arguing that if the jury excluded "self-defense" it need not consider "unreasonable belief."

However, the jury was correctly instructed. The court admonished the jury to follow the instructions as given to it, the court read the instructions to the jury, and gave it a copy to take to the jury room. Additionally, both attorneys at one point correctly argued the unreasonable belief as a mitigating factor. The prosecutor also stated as a preface to the objectionable portion of his argument that he believed the jury need not go on to consider defendant's unreasonable belief argument. This emphasized that it was the prosecutor's argument rather than the law which the prosecutor was stating to the jury.

We find the error was cured by proper instructions, admonition to the jury, and the correct statement of the applicable law by counsel. (See *Terry*, 99 Ill. 2d 508, 460 N.E.2d 746; *Cobb*, 186 Ill. App. 3d 898, 542 N.E.2d 1171.) We note the trial court, in the instant case, did not rule on defendant's objections to the argument. A better practice is for the trial courts to sustain or overrule the objections when they are raised.

Defendant next argues the trial court abused its discretion in ad-

mitting and allowing the jury to view five photographs. Defendant contends the photographs were highly prejudicial, gruesome, and irrelevant. After closing argument, the State argued People's exhibit Nos. 26, 25, and 19 should go to the jury. After hearing argument on the question, the court stated exhibit Nos. 19 and 26 would be sent to the jury.

Absent plain error, defendant has waived review of this question. Defendant did not object at trial to admission of the photographs. He objected to admission of the photographs in his post-trial motion, but not to their "publication" to the jury. Generally, a trial objection and a post-trial motion raising the question are necessary to preserve review of an issue. (*People v. Boclair* (1989), 129 Ill. 2d 458, 544 N.E.2d 715; *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Since defendant did not object to the admission of the photographs at trial, he waived review of the admissibility of the photographs. Although defendant did object to the publication of exhibit Nos. 19 and 26 at trial, he only contested "admission" in his post-trial motion. Thus, he has also waived the "publication" question.

■ On the merits, no error occurred. The decision about admission of photographs is left to the discretion of the trial court. (*People v. Fierer* (1988), 124 Ill. 2d 176, 529 N.E.2d 972; *People v. Peterson* (1988), 171 Ill. App. 3d 730, 525 N.E.2d 946.) When photographs are relevant to establish any fact in issue, they are admissible, despite their gruesome nature. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) Photographs are admissible if they aid in the medical testimony, even though defendant concedes the cause of death. (*People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208; *People v. Williams* (1985), 137 Ill. App. 3d 736, 484 N.E.2d 1191.) The trial court must balance the prejudicial effect of the photographs with their probative value.

■ Here, exhibit No. 19 was an emergency room photograph of decedent, taken immediately after lifesaving measures had stopped. It is bloody; the victim's eyes are partially open; and it does show surgical clamps on an incision which had been made into decedent's chest. However, the photograph also shows the bullet wound. It is illustrative of the emergency room measures and was useful in conjunction with the medical testimony as to cause of death. Exhibit No. 26 is a photograph of decedent's body after it had been cleaned and before the autopsy. It too shows the bullet wound and a surgical incision. Since both photographs illustrated medical testimony, showed the bullet wound, and neither photograph was unduly gruesome, no abuse of

discretion occurred in publishing them. *Lindgren,* 79 Ill. 2d 129, 602 N.E.2d 208; *Speck,* 41 Ill. 2d 177, 242 N.E.2d 208.

■■ Defendant next argues the trial court erred in granting the State's motion *in limine* to preclude testimony concerning the 0.4 grams of cocaine and money found on decedent's person. Defendant contends on appeal that the court's ruling prevented him from presenting a defense based upon decedent's drug dealings. The record resolves this issue. The trial court never ruled the testimony about decedent's purported drug dealings was absolutely inadmissible or that defendant could not present a defense.

On April 17, 1989, the prosecutor made an oral motion *in limine* to prevent testimony about two packets containing the 0.4 grams of cocaine found in decedent's pockets. The prosecutor noted drugs had not been mentioned in discovery as a factor in the shooting. However, defense counsel indicated an intent to use the drugs in structuring a defense. The prosecutor argued the drugs were not relevant to defendant's justification defense as the argument was over money owed for a radio. Defense counsel argued decedent's reference to himself as "Big Daddy Caine" could, by inference, be a reference to himself as a drug dealer. Counsel noted this had been a point of dispute between defendant and decedent in the past. Defense counsel noted the cocaine, in addition to the money, found on decedent's person could show by inference decedent had been selling drugs. Counsel further argued "the jury might wish to make [*sic*] that Mr. Miles had come there to Fair Oaks *** to potentially use the Reed household as a place at which an individual could meet him and pick up these drugs." Defense counsel further argued this might explain defendant's actions.

The court noted there could be some relevancy, but that an adequate foundation had to be presented. The trial judge stated making a bold assertion that this scenario happened "without anything more" would not be allowed. However, he reasoned that if the proper foundation were set forth, the information would be admissible. The court initially reserved ruling on the use of the cocaine found on decedent's body. The court clarified by saying the drugs were not relevant merely because decedent possessed them. The court then stated it would not preclude reference to the drugs if: (1) the defendant established a proper foundation, and (2) the drugs were relevant to the defense.

Prior to opening statement, defense counsel stated the record would implicitly show defendant believed decedent was a drug dealer, they discussed it, and decedent by implication needed $25 to pay his

supplier. Counsel asked for a ruling on use of statements about the drugs and money found on decedent's person for purposes of opening argument. The court asked what relevance the drug had to the shooting if there was no evidence defendant knew they were there. The trial judge ruled, for purposes of opening statement, discussion of the drugs on decedent's person was not relevant. The judge then stated that if defendant could establish the cocaine had some bearing on the case, or knowledge of it which could be imputed to defendant and make him act the way he did, it would be admissible.

The record, thus, establishes that the trial court ruled, for purposes of opening statement, that mention of the cocaine and the money on decedent's person could not be made. From the record, the trial court did not preclude the "drug dealer/crack-house" defense from being raised. Defendant did not ask to present testimony concerning the drugs found in decedent's pockets after defendant testified.

Defense counsel in fact elicited testimony that decedent called himself "Big Daddy Caine," that defendant told decedent he would not have that stuff in his house, that the men discussed what "Big Daddy Caine" meant, and that decedent had been carrying a weapon earlier that day. However, defendant never stated decedent was a drug dealer or presented any testimony indicating they had argued over decedent's wish to turn the house into a cocaine distribution center. Defendant also did not state decedent was selling drugs on January 11, 1989; therefore, he believed defendant possessed a weapon. If this type of evidence had been presented, the court might have admitted testimony about the cocaine and money found on decedent's person. The court's ruling did not absolutely preclude presentation of evidence about the drugs and money found in decedent's clothing.

Under the circumstances presented here, the court's ruling did not in fact prevent defendant from presenting a defense. Therefore, no error occurred.

Defendant argues the trial court abused its discretion by allowing the State to use a prior felony conviction for impeachment. Defendant contends that since the present offense involves the use of a weapon and defendant had been previously convicted of unlawful use of a weapon by a felon, the jury would believe he had a propensity to commit this type of crime. After defendant rested, the prosecutor offered a certified copy of defendant's February 1, 1985, conviction. The prosecutor proposed submitting the certified copy, which stated defendant had been convicted of unlawful use of firearm by a felon, by possession of a .22 caliber rifle, after having previously been convicted of as-

sault with a deadly weapon.

Defendant objected based upon the prejudicial impact of the prior conviction. The court stated the certified copy of the 1985 conviction would be admitted for impeachment purposes. However, the court deleted reference to the prior assault and restricted the reference to a "1985 unlawful use of firearms by a felon" conviction. The court also admonished the jury and instructed the jury that the prior felony was only to be used in determining defendant's credibility.

■■ ■ Evidence of a prior crime may be used for impeachment if the offense was a felony or involved dishonesty and if it occurred within 10 years of the current offense. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) The trial court in all cases must balance the probative value of the prior offense with its prejudicial effect. (*Williams*, 137 Ill. App. 3d 736, 484 N.E.2d 1191.) In the instant case, the trial judge balanced the probative value of the 1985 conviction with its prejudicial effect. He limited the reference to the title of the offense. He deleted all reference to the predicate felony. The court also admonished the jury and instructed it that the prior felony was usable only in assessing credibility. No abuse of discretion occurred merely because the offenses involved weapons.

■■ The armed violence conviction must be vacated. Where multiple convictions arise from the same act, sentence may be imposed only on the more serious offense. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) Here, defendant shot decedent once, causing decedent's death. Defendant was convicted of armed violence and first-degree murder. The armed violence conviction, as the less serious offense, must be vacated.

For the above reasons, we affirm defendant's conviction of first-degree murder and vacate his conviction of armed violence.

Affirmed in part; vacated in part.

GREEN and STEIGMANN, JJ., concur.