2018 IL App (3d) 160186

Opinion filed December 18, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-16-0186 |
| v. | ) ) | Circuit No. 15-CF-1745 |
| ERIC W. CATCHINGS, | ) ) ) | Honorable Edward A. Burmila Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices Holdridge and Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Eric W. Catchings, appeals from his convictions for aggravated domestic

battery and domestic battery. Defendant raises two issues on appeal: (1) he was denied a fair trial

where the court allowed the State to use his prior felony conviction for possession of a weapon

by a felon for impeachment purposes and (2) his conviction and sentence on count IV is subject

to vacatur under the one-act, one-crime rule. We affirm in part and vacate in part.

¶ 2                                    I. BACKGROUND

¶ 3        In September 2015, the State charged defendant with two counts of aggravated domestic

battery (720 ILCS 5/12-3.3(a-5), (a) (West 2014)) and two counts of domestic battery (*id.* § 12-

3.2(a)(1)). Relevant to this appeal, count II alleged that defendant "knowingly caused great bodily harm to Misty Bronzell, a household member of the defendant, in that said defendant struck Misty Bronzell about the head." Count IV alleged that "defendant knowingly and without legal justification caused bodily harm to Misty Bronzell, a family or household member, in that said defendant struck Misty Bronzell about the head."

¶ 4      Before trial, defendant filed a motion *in limine* to prevent the State from introducing evidence of his prior felony convictions. The motion alleged that defendant had two prior felony convictions for possession of a weapon by a felon in 2011 and aggravated assault in 1995. The court ruled that the State could not use defendant's 1995 conviction for impeachment, and it reserved its ruling on the 2011 conviction. Regarding the State's use of defendant's 2011 conviction, the court was concerned

> "that the jurors will get the impression that the defendant has a habit of going around armed. I don't know what the facts of the case are going to be, and they would be determinative in my mind of whether I'm going to allow you to use this even to impeach the defendant."

Defendant's case proceeded to a jury trial.

¶ 5      The State called the victim, Misty Bronzell, as its first witness. Bronzell stated that she had a dating relationship with defendant. On August 19, 2015, around 7 p.m., defendant visited Bronzell at her apartment. At that time, defendant was drinking an alcoholic beverage and appeared drunk. Defendant acted "real belligerent," and Bronzell told defendant that she did not want him drinking in her home. Defendant responded "F that" and "I can do what I want. You are not my woman ***. I am a free man."

2

¶ 6        Approximately one or two hours later, Bronzell and defendant were sitting on the couch when defendant punched Bronzell in the head. Bronzell was afraid and did not move. Defendant appeared very angry and punched Bronzell another 15 to 20 times on her head. Bronzell thought she was going to die and began to lose consciousness. Defendant then placed his hands around Bronzell's neck, applied firm pressure, and said "you're going to die, you're going to die." Bronzell could not breathe and the chokehold bruised the skin on her neck. When defendant saw blood in Bronzell's mouth, defendant began to cry and said "my God, what did I do to you?" Defendant retrieved ice from the freezer and instructed Bronzell to place it on her swollen face. Bronzell asked defendant to leave and assured defendant that she was not going to call the police. Bronzell told defendant that she would tell anyone who asked about her injuries that she had fallen and hit her head on a table. At the time, Bronzell did not realize the severity of her injuries and feared that defendant would kill her if she notified the police.

¶ 7        When defendant left the apartment, Bronzell fell asleep. Around 6 or 7 a.m. the next morning, Bronzell's roommate, Jamie Albert, entered the apartment. Upon seeing Bronzell's injuries, Albert said he was taking Bronzell to the hospital. Bronzell told Albert that defendant had caused her injuries and she was afraid to notify the police because she thought defendant would kill her.

¶ 8        Two police officers met Bronzell at St. Joseph Medical Center. Before the trial, the State showed Bronzell the written statement that she made at the hospital to an officer. Bronzell was otherwise unable to recall making the statement. At the time of Bronzell's hospital admission, Bronzell's face was so swollen that she could barely open her mouth. A computerized tomography (CT) scan of Bronzell's head showed a subdural hematoma. Following the scan,

3

Bronzell was admitted into the neurological intensive care unit (ICU). Bronzell spent three days in the ICU and one day in a regular hospital room before being released.

¶ 9     The State introduced photographs of Bronzell's injuries. Bronzell explained that exhibit Nos. 1 and 2 showed bruising to her arm. Bronzell thought the bruises were caused by defendant grabbing her arm. Bronzell said that she tried to cover her head with her arm while she was sitting on the couch. Exhibit No. 3 showed the bruising on the right side of Bronzell's face. Bronzell explained that the bruising remained for nearly one month. Bronzell also suffered from disorientation, memory loss, and anxiety.

¶ 10    Bronzell said that no one was present in the apartment at the time of defendant's attack. Bronzell also said that she did not incur her injuries as a result of a fall.

¶ 11    Albert testified that at around 7 a.m., on August 20, 2015, he returned to the apartment that he shared with Bronzell. Albert noticed that Bronzell's face was very swollen and she had several cuts and bruises. Albert took Bronzell to the hospital.

¶ 12    Joliet Police Officer Joe Hernandez testified that he met with Bronzell at the hospital. Hernandez recalled that Bronzell had suffered bruising to her face and arm and she seemed disoriented. Bronzell made a written statement and told Hernandez that defendant had caused her injuries. Two other officers then arrested defendant.

¶ 13    Joliet Police Officer Shawn Wascher testified that he assisted Hernandez in interviewing Bronzell at the hospital. Wascher and Hernandez met with Bronzell while she was in the neurological ICU. Bronzell had bruising on her neck, face, and arm, and bleeding on her brain. Bronzell had a difficult time communicating with the officers. After speaking with Bronzell, Wascher interviewed defendant. Defendant told Wascher that he and Bronzell had gotten into an argument and that Bronzell tripped over her sundress and fell onto a stool.

4

¶ 14    Emergency room (ER) nurse Christine Somodi testified that she treated Bronzell on August 20, 2015. Bronzell's face was swollen and her arm was bruised. Bronzell told Somodi that the injuries were the result of being physically punched and choked. Bronzell made no reference to a fall. Bronzell stayed in the ER until the medical personnel received the results of her CT scan.

¶ 15    Dr. Richard Louissaint testified that he treated Bronzell in the ER. At the time, Bronzell complained of suffering injuries in an assault and battery. Bronzell appeared to be in moderate distress, but was able to answer Louissaint's questions. Louissaint observed bruising along Bronzell's arm and right angle of her jaw. Following a CT scan, Louissaint diagnosed Bronzell with a subdural hematoma. Louissaint explained a subdural hematoma is usually caused by the application of "a great amount of force." The force applied to the patient causes bleeding in an area surrounding part of the brain. Typically, a subdural hematoma results from a vehicle collision, fall, or an assault with a weapon. Louissaint further explained that subdural hematomas can be mortal injuries because the bleeding causes pressure to build around the brain. Additionally, a subdural hematoma can cause a patient to suffer memory loss and weakness on one side of the body. Following the subdural hematoma diagnosis, Louissaint admitted Bronzell to the neurological ICU for observation. Louissaint opined that Bronzell's injuries were not consistent with a fall because she had injuries to more than one area of her face and body.

¶ 16    Neurosurgeon Dr. Tamir Hersonskey testified that he treated Bronzell on August 20, 2015. Bronzell had been admitted to the hospital with a traumatic subdural hematoma. Hersonskey monitored and treated the hematoma while Bronzell was in the hospital. Hersonskey explained that

5

"a small percent of people who present with intercranial bleed, we call them the people who speak and die. They can initially present with an intact neurological examination, but later there can be development of increase in the size of the hematoma or brain swelling, potentially seizure, which can create a neurological deterioration and potentially even death."

Hersonskey said that Bronzell's injury could cause cognitive deterioration or dementia.

¶ 17          Bronzell's mother, Joan Woods, testified that on August 20, 2015, she received a telephone call from St. Joseph Medical Center that Bronzell had been admitted to the neurological ICU. Upon entering Bronzell's hospital room, Woods did not recognize Bronzell. Woods explained "[i]t was like the most horrifying thing a mother could see. She looked bludgeoned. There was bruising on the right side, the left side. There was blood coming out of her mouth. Horrible pain." Bronzell's speech was mostly incomprehensible, but Woods was able to glean that Bronzell had been repeatedly punched and lost consciousness three times. When Bronzell was released from the hospital, she suffered from memory loss and nightmares. Woods said Bronzell's bruises did not fade for two weeks.

¶ 18          The State rested after Woods's testimony. The court then ruled on the admissibility of defendant's 2011 conviction for possession of a weapon by a felon.

"After reviewing all of the evidence in this case, there wasn't any argument that the defendant used a weapon, which is what I was most concerned about. So in regard to the Motion *in Limine*, if the defendant chooses to testify, the State will be able to use the fact of his felony conviction to impeach his credibility."

¶ 19          Following the court's ruling, defendant elected to testify in his defense. Defendant said that he dated Bronzell "off and on" starting in December 2014. Around 5 p.m. on August 19,

6

2015, defendant went to visit Bronzell at her apartment. Defendant and Bronzell conversed, drank an alcoholic beverage, ate, and watched movies. Defendant said that neither he nor Bronzell were drunk that night. A few hours later, defendant went to leave, Bronzell said she did not want defendant to leave, and an argument ensued. During the argument, Bronzell jumped up off the couch, slipped on her sundress, and fell on the floor. Bronzell then sat up and made eye contact with defendant, and defendant left the apartment. Defendant did not check to see if Bronzell was okay, but recalled that he did not see any injuries. Defendant said that he did not punch, choke, or grab Bronzell.

¶ 20    After defendant's testimony, the State moved to admit into evidence a certified copy of defendant's prior felony conviction. The court admitted the certified copy over defense counsel's objection. The State proposed the following phrasing for the introduction of defendant's prior conviction:

> "In rebuttal we wish to present a certified conviction of the defendant dated November 9, 2011, for the felony charge of possession of weapon by a felon, not as a habitual criminal."

The court ordered the State to remove the words "habitual criminal" from the statement and allowed the State to use it to impeach defendant's credibility. Thereafter, the State introduced a certified copy of defendant's 2011 conviction for possession of a weapon by a felon.

¶ 21    At the beginning of the jury instruction conference, the State submitted its proposed instructions to the court. The court then reviewed the list of proposed instructions with the parties. Included with the State's proposed instructions was Illinois Pattern Jury Instructions, Criminal, No. 3.12 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.12) "regarding the use of a prior conviction." In response to the court's reference to IPI Criminal No. 3.12, defense

7

counsel said "[n]o objection." Subsequently, the court instructed the jury that "[e]vidence that a witness has been convicted of an offense may be considered by you only as it may affect the believability of that witness."

¶ 22 The jury found defendant guilty of each of the charged offenses.

¶ 23 Defendant filed a motion for a new trial, arguing that the court erred in denying defendant's pretrial motion to exclude evidence of defendant's prior conviction. The court denied the motion.

¶ 24 The court sentenced defendant on counts I and II to concurrent terms of six years' imprisonment. The court sentenced defendant on counts III and IV to concurrent terms of 90 days in jail. Defendant appeals.

¶ 25                                      II. ANALYSIS

¶ 26                               A. Prior-Crimes Evidence

¶ 27 Defendant argues that the court infringed on his right to a fair trial where it allowed the State to impeach his credibility with his 2011 felony conviction for possession of a weapon by a felon. Defendant contends that the court abused its discretion in admitting this evidence because (1) defendant's prior conviction was irrelevant, (2) the court failed to balance the prejudicial effect of the conviction against its probative value, (3) the court compounded this error by reading the prior-crimes instructions for a testifying witness instead of a testifying defendant, and (4) the admission of defendant's possession of a weapon by a felon conviction violated the mere-fact rule.

¶ 28 Generally, evidence of a defendant's other crimes is inadmissible to show a defendant's propensity to engage in criminal activity. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). However, where defendant elects to testify, the State may impeach his credibility with evidence

of a prior conviction. *People v. Tribett*, 98 Ill. App. 3d 663, 675 (1981). In *People v. Montgomery*, 47 Ill. 2d 510, 516-19 (1971), the supreme court adopted the 1971 proposed draft of Rule 609 of the Federal Rules of Evidence. Congress subsequently enacted a different form of Rule 609, but the *Montgomery* rule continues to apply in the Illinois courts. *People v. Naylor*, 229 Ill. 2d 584, 596 (2008). On January 11, 2011, the supreme court codified and adopted the Illinois Rules of Evidence. Illinois Rule of Evidence 609 (eff. Jan. 6, 2015) codified the *Montgomery* rule. Rule 609 states:

"(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime, except on a plea of nolo contendere, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the court determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date." Ill. R. Evid. 609(a), (b) (eff. Jan. 6, 2015).

¶ 29    In this case, the court allowed the State to impeach defendant's credibility with evidence of defendant's 2011 possession of a weapon by a felon conviction. This impeachment falls under the first proposition—it was a crime punishable by imprisonment in excess of one year. *Id.*

9

¶ 30    We review the circuit court's ruling for an abuse of discretion. *People v. Patrick*, 233 Ill. 2d 62, 68 (2009). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

¶ 31                                  1. Relevancy

¶ 32    Defendant first contends that the court abused its discretion in admitting his prior conviction because his "prior conviction for possession of a weapon by a felon is *** not very relevant to the issue of credibility" and this should have caused the court to give little, if any, weight to the probative value of the prior conviction. See *People v. Adams*, 281 Ill. App. 3d 339, 345 (1996).

¶ 33    Historically, the impeachment by prior conviction rule was "premised upon the assumption that a person with a criminal record has a bad general character, evidenced by his willingness to disobey the law, and that his bad general character would lead him to disregard his oath to testify truthfully." Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 609.1, at 552-53 (2018 ed.). Under this rule, evidence of a defendant's prior criminal offense was relevant to impeach his credibility because it showed a propensity to disregard the law. This theory has fallen out of favor because "evidence of a prior conviction tends to persuade the jury that, on the basis of past conduct, defendant is a probable perpetrator of the crime or [it] influence[d] jurors to convict simply because they feel he is a bad person deserving of punishment." *Id.* at 553. Partly in response to these concerns, *Montgomery* adopted a balancing test. *Montgomery*, 47 Ill. 2d at 517. A defendant's prior conviction would be excluded from evidence where its probative value was substantially outweighed by the danger of unfair prejudice. *Id.* at 517-18.

10

"On one side of the scale the trial judge was to place the probative value of the prior conviction. That is, the judge must consider the relevance of the prior conviction to an evaluation of the defendant's credibility as a witness. On the other side of the scale, the trial judge was to place all the factors that could result in unfair prejudice to the testifying defendant." *People v. Elliot*, 274 Ill. App. 3d 901, 906 (1995), *abrogated on other grounds by People v. Williams*, 173 Ill. 2d 48 (1996).

In conducting this test, a circuit court should consider

"the nature of the earlier crimes, the length of the defendant's criminal record, his age and circumstances, whether it was more important for the jury to hear the defendant's version of the facts than to know of his earlier conviction, the nearness or remoteness of the earlier conviction, the defendant's career after the conviction and whether the earlier crime was similar to the one charged." *People v. Barner*, 374 Ill. App. 3d 963, 969-70 (2007).

¶ 34    In this case, defendant's prior conviction for possession of a weapon by a felon was a "status-based" offense. See *People v. McFadden*, 2016 IL 117424, ¶ 29. In contrast to the charged offense, this conviction included no element of serious harm, and it bore little similarity to the charged offenses. The lack of similarity reduced the prejudice to defendant as it avoided the propensity problems that generally bar prior convictions. See *Donoho*, 204 Ill. 2d at 170. Further, this conviction was probative of defendant's credibility because it was part of defendant's larger criminal history. Defendant's criminal history included the more remote, but similar, 1995 conviction for aggravated assault. Additionally, defendant's possession of a weapon by a felon conviction was relatively recent to the charged offense as it occurred

11

approximately four years earlier. In light of these factors, we find that defendant's 2011 conviction for possession of a weapon by a felon was relevant to and probative of defendant's credibility.

¶ 35                                    2. Balancing Test

¶ 36        Defendant argues the court failed to conduct a proper *Montgomery* hearing because it merely mentioned the dissimilarity of the charged offenses to defendant's 2011 conviction and did not balance the probative value of the conviction against its prejudicial effect.

¶ 37        At the outset, we note that the court need not expressly conduct the *Montgomery* balancing test on the record. *People v. Mullins*, 242 Ill. 2d 1, 16 (2011) (citing *People v. Atkinson*, 186 Ill. 2d 450, 462 (1999)).

¶ 38        The record in the instant case establishes that the court implicitly conducted the *Montgomery* balancing test. During the hearing on defendant's motion *in limine*, the court expressed concern that defendant's prior conviction might be more prejudicial than probative because it was potentially similar to the charged offenses. Therefore, the court reserved its ruling until it heard the State's evidence. Ultimately, the State's case, which included no reference to the use of weapon, allayed the court's prejudice concerns as the evidence did not show that defendant had used a weapon. While the court did not know if defendant intended to testify, it was aware that defendant's credibility was a central issue to the case. This made the State's impeachment evidence relevant to the overall case. Therefore, the record establishes that the court did not abuse its discretion as it implicitly balanced these factors when it ruled the State may use defendant's 2011 conviction for possession of a weapon by a felon for purposes of impeachment.

12

¶ 39                                    3. Jury Instruction

¶ 40        Defendant argues that the court's allegedly erroneous admission of his prior crimes was

exacerbated by the court's mistaken use of the IPI Criminal No. 3.12, the impeachment of a

witness by prior conviction instruction, instead of IPI Criminal No. 3.13, for the impeachment of

a defendant by his prior conviction.

¶ 41        Initially, we reaffirm our finding that the court did not err when it allowed the State to

impeach defendant's testimony with his 2011 conviction. *Supra* ¶ 38. However, in the interest of

completeness, we address defendant's argument.

¶ 42        Defendant's argument fails for two reasons. First, defendant acquiesced to the court's use

of IPI Criminal No. 3.12 when he expressly did not object to the instruction or independently

seek the use of IPI Criminal No. 3.13. Second, any error caused by the court's use of IPI

Criminal No. 3.12 was harmless.

¶ 43        Both IPI Criminal Nos. 3.12 and 3.13 instruct the jury on the proper use of prior crimes

impeachment evidence. However, IPI Criminal No. 3.12 is directed at the impeachment of a

testifying witness and states "[e]vidence that a witness has been convicted of an offense may be

considered by you only as it may affect the believability of the witness." IPI Criminal No. 3.13

instructs the jury on the use of a defendant's prior conviction and directly instructs the jury not to

consider defendant's prior conviction as evidence of guilt. It states, "[e]vidence of a defendant's

previous conviction of an offense may be considered by you only as it may affect his

believability as a witness and *must not be considered by you as evidence of his guilt of the*

*offense with which he is charged*." (Emphasis added.) IPI Criminal No. 3.13.

¶ 44        In this case, the State impeached defendant's testimony with evidence of defendant's

2011 conviction for possession of a weapon by a felon. Therefore, IPI Criminal No. 3.13 was the

more appropriate jury instruction. However, the Committee Note to IPI Criminal No. 3.13 states, "[t]his instruction should be given *only at the request of the defendant* when there has been impeachment of the defendant by proof of a prior conviction." (Emphasis added.) See *People v. Cook*, 262 Ill. App. 3d 1005, 1019 (1994) ("Giving this instruction at the behest of the State may unfairly accentuate defendant's past criminal record.").

¶ 45      The record establishes that defendant did not request IPI Criminal No. 3.13. Instead, when the court referenced IPI Criminal No. 3.12, defense counsel responded "[n]o objection." Defense counsel thus acquiesced to the use of IPI Criminal No. 3.12. As a result, defendant cannot complain of this alleged instruction error. See *People v. Rachel*, 123 Ill. App. 3d 600, 606 (1984) ("It is axiomatic that a defendant cannot complain of error in instructions to which he has acquiesced, induced or invited or which were given at his request ***.").

¶ 46      Even if we set aside defendant's acquiescence, we find the court's issuance of IPI Criminal No. 3.12 was harmless error. "An error in a jury instruction is harmless if it is demonstrated that the result of the trial would not have been different if the proper instruction had been given." *People v. Johnson*, 146 Ill. 2d 109, 137 (1991).

¶ 47      Here, the evidence at trial was heavily weighted against defendant. Bronzell testified that defendant choked and beat her to the point that she lost consciousness. As a result of defendant's actions, Bronzell suffered bruising to her arm, neck, and head, and a subdural hematoma that necessitated a stay in the neurological ICU. Altogether, Bronzell spent four days in the hospital and continues to suffer from cognitive and memory issues. Bronzell's explanation of the cause of her injuries was corroborated by Dr. Louissaint's testimony that Bronzell's injuries were inconsistent with a fall. Defendant's testimony contradicted Bronzell, as he said that Bronzell suffered the injuries as a result of a fall. However, defendant's testimony failed to refute

14

Louissaint's statement that Bronzell's injuries were too extensive to have been caused by a fall. Moreover, defendant's explanation that he observed Bronzell's fall, but did not render aid, despite the severity of her injury, was implausible. According to defendant, he was in a relationship with Bronzell at the time, but did not help Bronzell after she fell on the stool and instead left the apartment. In light of this evidence, any error incurred by the court's use of IPI Criminal No. 3.12 was harmless, as it did not affect the outcome of the trial.

¶ 48                                                     4. Mere-Fact Rule

¶ 49        Defendant argues that the court should have excluded his prior conviction for possession of a weapon by a felon because its use violated the "mere-fact" impeachment approach that was rejected by the Illinois Supreme Court in *Atkinson*, 186 Ill. 2d at 458. Defendant contends that the State impeached his credibility with two convictions—possession of a weapon by a felon and the unnamed predicated felony. Defendant argues that the unnamed predicated felony impermissibly resulted in his impeachment by the "mere fact" that he had a prior unspecified felony.

¶ 50        "The mere-fact method of impeachment informs the jury only of the 'mere fact' of a witness' prior conviction, but not the nature of that conviction." *Id.* at 457. In *Atkinson*, the supreme court expressly rejected the mere-fact method of impeachment and reaffirmed the use of the *Montgomery* analysis. *Id.* at 458, 461. In *People v. Cox*, 195 Ill. 2d 378, 386 (2001), the supreme court reasserted its rejection of mere-fact impeachment, stating "[i]n *Atkinson*, however, we held that 'trial courts *should not* consider the mere-fact method of impeachment.' (Emphasis added.) *Atkinson*, 186 Ill. 2d at 461. We find no suggestion in this unequivocal language that a trial court's discretion encompasses mere-fact impeachment."

¶ 51    The record in the present case establishes that the court did not admit defendant's prior conviction in contravention of *Atkinson*. The State impeached defendant's credibility with evidence of his 2011 conviction for possession of a weapon by a felon. The nature of this conviction required reference to defendant's status as a felon. This reference is not tantamount to the introduction of a second conviction, as it does not describe the name or nature of the predicate felony. It is simply a part of the prior conviction that was used for impeachment. Moreover, the prejudicial effect of the State's reference to defendant's prior felon status was limited because the State did not provide the name or nature of defendant's prior felony. See, *e.g.*, *People v. Williams*, 2015 IL App (1st) 130097, ¶ 51 (finding the court did not err in allowing the State to enter the name of the prior conviction—unlawful use of a weapon by a felon—because it accurately informed the jury of the nature of the prior crime); *People v. Lillard*, 200 Ill. App. 3d 173, 181 (1990) (finding the court did not err when it allowed the State to impeach defendant with his prior conviction for unlawful use of a firearm by a felon where the court deleted reference to the predicate felony). Therefore, the State's reference to defendant's felon status did not contravene the supreme court's rejection of "mere-fact" impeachment. The reference was simply a necessary part of the felony that the State used to impeach defendant's credibility.

¶ 52                                B. One-Act, One-Crime

¶ 53    Defendant argues that his conviction and sentence entered on count IV must be vacated under the one-act, one-crime rule because it is included in count II. The State concedes that defendant's conviction on count IV is subject to vacatur.

¶ 54    Upon review of the record, we accept the State's concession and find defendant's domestic battery conviction, entered on count IV, is included within defendant's count II

16

conviction for aggravated domestic battery. The one-act, one-crime rule disallows multiple convictions that are " 'carved from the same physical act.' " *People v. Miller*, 238 Ill. 2d 161, 165 (2010) (quoting *People v. King*, 66 Ill. 2d 551, 566 (1977)). We review *de novo* the issue of whether defendant's conviction is subject to vacatur under the one-act, one-crime doctrine. *People v. Almond*, 2015 IL 113817, ¶ 47.

¶ 55 In this case, counts II and IV of the indictment contained the similar and nonspecific allegation that "defendant struck Misty Bronzell about the head." The trial evidence regarding these charges was similarly general, as the State did not differentiate which punch or strike to Bronzell's head caused each injury. Therefore, the conviction imposed on counts II and IV arise out of a single physical act. Accordingly, we vacate the less serious conviction for domestic battery. See *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996) (multiple convictions are improper if they are based on the same physical act).

¶ 56                                   III. CONCLUSION

¶ 57 The judgment of the circuit court of Will County is affirmed in part and vacated in part.

¶ 58 Affirmed in part and vacated in part.