SECOND DIVISION
May 16, 2006

No. 1-05-0842

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| ANTWINE STEWART, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

The ineffective assistance of counsel issue raised by the defendant requires us to consider the impact of the State's cavalier approach to producing search warrant documents requested by the defense.

Following a bench trial, defendant Antwine Stewart was convicted of possession of a controlled substance with intent to deliver and two counts of unlawful use of a weapon by a felon. He was sentenced to 10 years' imprisonment.

Defendant contends: (1) he was denied effective assistance of counsel; (2) the evidence was insufficient to prove him guilty beyond a reasonable doubt; and (3) the trial court erred by allowing the State to impeach him by admitting into evidence his prior felony conviction for unlawful use of a weapon by a felon. We affirm.

FACTS

Defendant was arrested on September 26, 2003. He was charged with

possession of a controlled substance with intent to deliver and two counts of unlawful use of a weapon by a felon. On November 19, 2003, defendant appeared in court for arraignment and a public defender was appointed to represent him. Defense counsel then made an oral motion for discovery. On January 27, 2004, defense counsel requested copies of the search warrant and complaint for search warrant. The case was then continued "by agreement" six times between January 27, 2004, and May 17, 2004, due to the inability of the State to obtain complete copies of the search warrant and the complaint in support of the warrant.

On May 17, 2004, defense counsel made an oral motion for bond reduction, which was denied without prejudice. Defendant then asked to address the court. The following colloquy occurred:

"DEFENDANT STEWART: No, I don't want to talk about the case. I just-- You know, I been incarcerated since 2003. And here it is every time I come to court in front of you, your Honor, it's the same thing; a continuance for a search warrant. The officer didn't never show me a search warrant in the house.

THE COURT: You're starting to talk about the case, Mr. Stewart.

*** 

DEFENDANT STEWART: I'm not talking about the case. I'm talking about me coming to court, getting these

continuances for something that's not showing up.

THE COURT: Mr. Jackson, you want to explain what I meant by without prejudice?

DEFENDANT STEWART: I don't understand, man.

MR. JACKSON [defense counsel]: I will, Judge. I'll talk to him about it.

DEFENDANT STEWART: I don't understand, man. I don't understand why is the Court still holding me."

On June 2, 2004, defense counsel informed the court that the State had tendered the search warrant data sheet, search warrant, and the complaint for search warrant. On August 30, 2004, however, defense counsel informed the court that the second page of the complaint for search warrant had been omitted. The case was continued by agreement twice between September 21, 2004, and October 4, 2004, in order for the State to subpoena Chicago police officer Anthony Blake, the signatory to the search warrant.

On October 4, 2004, the State informed the court that Officer Blake had been subpoenaed but had not shown up in court. Defense counsel renewed defendant's motion to reduce bond in light of the delay in obtaining the warrant. The court reduced defendant's bond from $75,000 to $50,000. On October 18, 2004, defense counsel acknowledged receipt of the missing materials. On October 27, 2004, defense counsel filed defendant's answer to the State's request for discovery. The case was set for a bench trial by agreement on December 9, 2004.

On December 9, 2004, the State informed the trial court that it would not be ready to proceed because Officer Blake was not available to testify. The case was continued by agreement to January 20, 2005. Defendant's bench trial commenced on January 20.

At trial, Officer Blake testified that he and eight other officers executed a search warrant at 8617 South Maryland in Chicago on September 26, 2003. Officer Blake knocked on the front door and announced he was a police officer. After he did not receive a response, Officer Blake and six other officers forcibly entered the house. While other officers secured two or three adults in the living room, Officer Blake went to the rear bedroom of the house and saw defendant sitting on a bed. Officer Blake then searched defendant and recovered three clear sandwich bags from his right pants pocket. Two of the bags contained a large amount of a "white chunky substance," which Officer Blake suspected to be crack cocaine. One of the bags contained nine smaller bags, each containing a "white rock-like substance," which Officer Blake also suspected to be crack cocaine.

Officer Blake recovered $160 from defendant's left pants pocket, an electric scale from the top of a dresser in the rear bedroom, and two handguns from beneath a mattress in the rear bedroom. Defendant was arrested and read his Miranda rights. Officer Blake then asked defendant whether the clothing in the bedroom was his. Defendant responded "yes." When asked about the guns, defendant said, "I keep them for protection." During booking, defendant said he lived at 8617 South Maryland. Officer Blake did not find any mail, rent receipts, or bills indicating defendant lived in the

house.  Officer Blake did not remember whether defendant had state identification on his person when arrested.

The parties stipulated that the eleven bags of "white chunky substance" recovered by Officer Blake were inventoried and sent to the Illinois State Police Crime Lab.  Two of the eleven bags were tested for the presence of a controlled substance.  The parties stipulated that the contents of the two items tested were positive for the presence of cocaine, and that the actual weight of the two items was 124 grams.  The estimated weight of all eleven items was 127.2 grams.  Because of the large weight of the two items actually tested by the forensic chemist, we assume the chemist tested the two bags containing the large amounts of "white chunky substance."

Defendant testified that on September 26, 2003, he was visiting a friend's house at 8617 South Maryland.  Defendant and Skip Tansley were in the master bedroom watching a basketball game when they heard glass breaking.  They ran out of the room and saw several police officers with guns drawn.  Defendant and Tansley then were handcuffed and placed on the living room floor.  Defendant was searched, but not by Officer Blake.  Nothing was recovered.  Defendant heard the police searching upstairs and in the basement apartment.  He did not see the police recover anything.  He was not shown any drugs or weapons.  Defendant admitted he was the only person arrested in the house.

Defendant testified that at the time of his arrest he was living at 709 East 88th Street, not 8617 South Maryland.  The officers removed a state firearm owner's identification card from his pocket when they searched him.  However, the Cook County

Department of Corrections lost the card. Defendant admitted he had clothes with him in a carrying bag, but said he did not keep additional clothing in the house. Defendant often went to the house in order to shower, but never spent the night.

The parties stipulated to defendant's prior convictions for impeachment purposes only. The parties stipulated that on August 4, 1995, defendant was convicted of unlawful use of a weapon by a felon. The parties also stipulated that on May 28, 1998, defendant was convicted of possession of a stolen motor vehicle, and that on November 15, 2001, defendant was convicted of manufacture and delivery of a controlled substance. Considering the stipulations, the trial court concluded, after balancing the prior convictions with the present charges, it would consider only the first two convictions for impeachment.

The trial court found defendant guilty of possession of a controlled substance with intent to deliver and two counts of unlawful use of a weapon by a felon. The court noted evidence of intent to deliver included the weight of the items, the fact that two of the bags were un-packaged while the third was packaged, and the scale found in the room. The defendant's motion for new trial was denied.

Following the sentencing hearing, defendant was sentenced to a 10-year prison term for possession of a controlled substance with intent to deliver and two concurrent 6-year prison terms for each of his unlawful use of a weapon by a felon convictions.

DECISION

I. Ineffective Assistance

    A. Speedy Trial Rights

Defendant contends he received ineffective assistance of counsel because his lawyer failed to move for discharge on statutory speedy trial grounds and failed to raise the issue in a post-trial motion.  We stress that he does not claim defense counsel was ineffective when agreeing to the continuances.

Where the effectiveness of a defendant's trial counsel is questioned, the defendant must show that counsel's representation fell below an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  There are two components to an ineffective assistance of counsel claim: (1) deficient performance and (2) prejudice.  People v. Jackson, 318 Ill. App. 3d 321, 326, 741 N.E.2d 1026 (2000), citing Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S. Ct. 838, 842, 122 L. Ed. 2d 180 (1993).

A defendant not only must show his lawyer's representation "fell below an objective standard of reasonableness," but, also,  "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  People v. Albanese, 104 Ill. 2d 504, 525, 473 N.E.2d 1246 (1984).  Specifically, the defendant must show that defense counsel's deficiencies so prejudiced the defendant as to deprive him of a fair trial with a reliable result.  People v. Caballero, 126 Ill. 2d 248, 259-60, 533 N.E.2d 1089 (1989).  The defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," that is, that "the challenged action might be considered sound trial strategy."  People v. Pecoraro, 175 Ill. 2d 294, 319-20, 677 N.E.2d 875 (1997).

An attorney's failure to seek discharge of his client on speedy trial grounds

generally will constitute ineffective assistance when there is a reasonable probability

that the defendant would have been discharged had a timely motion been made, and no

justification existed for the attorney's decision not to file a motion. People v. Staten, 159

Ill. 2d 419, 431, 639 N.E.2d 550 (1994); People v. Peco, 345 Ill. App. 3d 724, 728-29,

803 N.E.2d 561 (2004). Defense counsel's failure to argue a speedy trial violation in a

post-trial motion may also constitute ineffective assistance. Peco, 345 Ill. App. 3d at

729.

Section 103-5(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS

5/103-5(a) (West 2002)) provides that a defendant is entitled to a trial within 120 days

from the date he is taken into custody unless defendant's own acts occasion delay. "A

defense counsel's agreement to a continuance, appearing of record, may be considered

a delay attributable to defendant." Staten, 159 Ill. 2d at 433. Moreover, "[d]elay shall be

considered agreed to by the defendant unless he or she objects to the delay by making

a written or oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2002).

Defendant contends his comments to the trial court on May 17, 2004, constituted

a demand for trial. However, defendant's comments were vague at best. Defendant

stated:

> "I'm not talking about the case. I'm talking about me coming
>
> to court, getting these continuances for something that's not
>
> showing up. *** I don't understand, man. I don't understand
>
> why is the Court still holding me."

While defendant's comments clearly indicate he was frustrated by the delay, they do not

indicate he was demanding trial.  Instead, defendant's comments indicate he thought he should be released from jail because the State could not produce the search warrant.  Defendant did not object when defense counsel agreed to additional continuances for the State to obtain the search warrant.

However, this case is not as clear as it first appears.  It would be easy to say that by agreeing to the continuances the defendant abandoned his statutory right to a speedy trial.  But there is another factor here that requires our attention.

The reason defense counsel agreed to the continuances was the State's failure to produce the search warrant documents, ordinarily not a challenging task.  Not only couldn't the State find the documents, it had a difficult time locating the arresting officer, Officer Blake.  It took almost nine months before the State finally produced the papers and the officer.  That placed defense counsel in a dilemma.

The defendant's only viable defense was an attack on the legality of the search.  It is a rare case where the trial judge rejects a police officer's testimony that the drugs were found in the defendant's pocket.  Obviously, defense counsel could not attack the search warrant until he examined the sworn complaint that supported it.

It would be malpractice to proceed to trial without seeing the search warrant documents.  Hence, the dilemma.  If the defendant were to persist in a demand for trial, he might get it--without ever seeing the warrant or affidavit.  If the defense had agreed to continuances until the State got around to producing the documents and Officer Blake--something that should have taken days or weeks, not months--the defendant would have, as the State now suggests, waived his right to a speedy trial.  In effect, the

State's indifference in this case virtually coerced the defendant's agreement to the continuances.

There is fault to be spread. All the players failed the defendant––the Assistant State's Attorney who didn't seem to care, defense counsel who did little to create a sense of urgency, the police officer who treated this case like a petty annoyance, and the trial judge who rubber-stamped the "by agreement" continuances without vigorous inquiry.

We do not find defense counsel constitutionally ineffective for failing to challenge these "by agreement" continuances in a motion for discharge. We cannot find any precedent to compel such a result. Still, we cannot help believing that the spirit, if not the letter, of the speedy trial statute was offended in this case.

B. Motion to Suppress

Defendant also contends his trial counsel was ineffective for failing to file a motion to suppress evidence. Specifically, defendant contends his trial counsel was ineffective for failing to challenge Officer Blake's probable cause to search 8617 South Maryland or to search the defendant.

To establish prejudice resulting from defense counsel's failure to file a motion to suppress, a defendant must show a reasonable probability that: (1) the motion would have been granted, and (2) the outcome of the trial would have been different had the evidence been suppressed. People v. Patterson, 217 Ill. 2d 407, 438, 841 N.E.2d 889 (2005). "The failure to file a motion to suppress does not establish incompetent representation when the motion would have been futile." Patterson, 217 Ill. 2d at 438.

Other than claiming he did not live in the house when it was searched, the defendant has not provided us with any indication of why the police lacked probable cause to search the apartment and him.

We find defense counsel's failure to file a motion to suppress did not amount to ineffective assistance because defendant has not shown a reasonable probability that such a motion would have been granted.

II. Sufficiency of the Evidence

A. Intent to Deliver

Defendant contends the State failed to prove beyond a reasonable doubt that defendant had the intent to deliver the cocaine.

The relevant issue to be resolved is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. People v. Pollock, 202 Ill. 2d 189, 780 N.E.2d 669 (2002); People v. Robinson, 167 Ill. 2d 397, 407, 657 N.E.2d 1020 (1995). It is the responsibility of the trier of fact to determine the credibility of witnesses and the weight to be given their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. People v. Ortiz, 196 Ill. 2d 236, 259, 752 N.E.2d 410 (2001). We will not set aside a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. Ortiz, 196 Ill. 2d at 259.

To sustain defendant's conviction, the State was required to prove: (1)defendant had knowledge of the presence of the controlled substance; (2) the controlled

substance was within defendant's immediate control or possession; and (3) defendant intended to deliver the controlled substance. People v. Burks, 343 Ill. App. 3d 765, 768, 799 N.E.2d 745 (2003).

Because direct evidence of intent to deliver is rare, the defendant's intent usually must be proved through circumstantial evidence. Robinson, 167 Ill. 2d at 407; People v. Clark, 349 Ill. App. 3d 701, 704, 812 N.E.2d 584 (2004). In Robinson, the supreme court outlined factors that have traditionally been probative of intent, such as possession of weapons, large amounts of cash, large amounts of drugs, beepers, or drug paraphernalia. Robinson, 167 Ill. 2d at 411-12. Whether the inference of intent is sufficiently raised is determined on a case-by-case basis and the enumerated factors are not exclusive. Robinson, 167 Ill. 2d at 412-13.

In this case, the evidence showed Officer Blake recovered three clear sandwich bags from defendant's right pants pocket. Two of the bags contained a large amount of a "white chunky substance," which subsequently tested positive for cocaine in the amount of 124 grams. The third bag contained nine smaller bags, each of which contained a "white rock-like substance." Contrary to the State's contention, the substances contained in the nine smaller bags were not tested by the forensic chemist.

While we recognize the nine smaller bags were not tested by the forensic chemist, the fact that only the two large bags were tested and determined to contain controlled substances "affects only the weight to be given the evidence rather than its admissibility." See Robinson, 167 Ill. 2d at 410. We find the trial court did not err by considering the fact that two of the bags were un-packaged while the third was

packaged.

Besides the 124 grams of cocaine and the 3.2 grams of suspect crack cocaine recovered from defendant, Officer Blake also recovered a scale and two loaded handguns from the rear bedroom. According to Officer Blake, defendant stated the handguns were "for protection." Scales and guns have traditionally been considered probative of a defendant's intent to deliver. See Robinson, 167 Ill. 2d at 411-12. While defendant specifically denied Officer Blake recovered the drugs and guns from his possession, the trial court was entitled to believe Officer Blake's recollection of the events over defendant's. See Ortiz, 196 Ill. 2d at 259. After carefully reviewing the record, we cannot say the evidence of intent to deliver in this case was so unsatisfactory as to create a reasonable doubt as to defendant's guilt.

We find a rational trier of fact could have found defendant guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver.

B. Unlawful Use of a Weapon by a Felon

Defendant also contends the State failed to prove beyond a reasonable doubt that defendant knowingly possessed a firearm.

In order to sustain a conviction for unlawful use of a weapon by a felon, the State must prove the defendant knowingly possessed a prohibited firearm and had a prior felony conviction. People v. Hampton, 358 Ill. App. 3d 1029, 1031, 833 N.E.2d 23 (2005). Because this is a constructive possession case, the State had to prove defendant (1) had knowledge of the presence of the weapon, and (2) had immediate and exclusive control over the area where the weapon was found. Hampton, 358 Ill.

App. 3d at 1031; People v. Grant, 339 Ill. App. 3d 792, 798, 791 N.E.2d 1278 (2003).

Here, the parties stipulated defendant was convicted of delivery and manufacture of a controlled substance on November 15, 2001. Officer Blake recovered two loaded handguns from underneath a mattress in the rear bedroom of the house. Prior to conducting the search, Officer Blake observed defendant sitting on the mattress. When Officer Blake asked defendant about the guns, defendant said, "I keep them for protection." Defendant admitted to Officer Blake that he lived in the house. Defendant also admitted clothes found in the rear bedroom belonged to him. While defendant's testimony at trial regarding the guns contradicted Officer Blake's testimony, it was up to the trial judge to determine the credibility of the witnesses and weigh the evidence. See Ortiz, 196 Ill. 2d at 259.

We find the State proved defendant guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon.

III. Impeachment

Defendant contends the trial court erred by using defendant's prior conviction for unlawful use of a weapon by a felon for impeachment purposes because the prior conviction was nearly 10 years old and the court never balanced the prejudice of the conviction against its probative value.

Initially, the State contends defendant forfeited this issue because he did not object to the stipulation at trial and failed to raise the issue in his post-trial motion. See People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).

While defendant admits he failed to object at trial or raise the issue in his post-

trial motion, he asks this court to review the issue under the plain error doctrine.  The plain error rule allows a reviewing court to consider trial errors not properly preserved when " '(1) the evidence in a criminal case is closely balanced or (2) where the error is so fundamental and of such magnitude that the accused was denied a right to a fair trial.' " People v. Harvey, 211 Ill. 2d 368, 387, 813 N.E.2d 181 (2004), quoting People v. Byron, 164 Ill. 2d 279, 293, 647 N.E.2d 946 (1995).  "Before invoking the plain error exception, however, we determine whether any error occurred."  People v. Chapman, 194 Ill. 2d 186, 226, 743 N.E.2d 48 (2000).  We find no error.

Our supreme court provided trial courts with the discretion to allow impeachment of a witness' testimonial credibility by admitting a prior conviction in People v. Montgomery, 47 Ill. 2d 510, 268 N.E.2d 695 (1971).  The Montgomery rule provides that for purposes of attacking a witness' credibility, "evidence of a prior conviction is admissible only if (1) the crime was punishable by death or imprisonment in excess of one year; or (2) the crime involved dishonesty or false statement regardless of the punishment."  People v. Williams, 173 Ill. 2d 48, 81, 670 N.E.2d 638 (1996).  In either case, however, the evidence is inadmissible if the judge determines the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, or if more than 10 years has elapsed since the date of conviction or release of the witness from confinement, whichever is later.  Williams, 173 Ill. 2d at 81; Montgomery, 47 Ill. 2d at 516.

Here, contrary to defendant's contention, the trial court properly balanced the value of defendant's prior convictions before considering them for impeachment

purposes. After the parties stipulated to defendant's prior felony convictions, the trial court specifically said: "For purposes of the prior convictions, in terms of <u>balancing</u> offenses of the prior conviction to the present charges, I will consider only the first two that has [<u>sic</u>] been presented for that purpose." (Emphasis added.)

Moreover, defendant specifically agreed to the stipulation regarding the prior convictions for impeachment purposes, including his conviction for unlawful use of a weapon by a felon in August 1995. Because defendant stipulated to his prior convictions for impeachment purposes, he cannot claim the trial court erred by not conducting a <u>Montgomery</u> balancing test prior to considering the evidence. See <u>People v. Cavert</u>, 326 Ill. App. 3d 414, 420, 760 N.E.2d 1024 (2001) ("We emphatically reject defendant's suggestion that the trial court must conduct the <u>Montgomery</u> balancing test when the parties have stipulated to the admission of the defendant's prior conviction for impeachment purposes.")

We find the trial court did not err when it considered defendant's conviction for unlawful use of a weapon by a felon for impeachment purposes.

CONCLUSION

We affirm the judgment of the trial court.

Affirmed.

GARCIA, P.J., and HALL, J., concur.

1-05-0842