FIRST DIVISION
June 29, 2007

No.1-04-3131

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | No. 03 CR 13739 |
| | ) | |
| JOHN BARNER, | ) | Honorable |
| | ) | Lawrence P. Fox, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CAHILL delivered the opinion of the court

Defendant John Barner was convicted by a jury of aggravated criminal sexual assault. 720 ILCS 5/12-14(a)(2) (West 1998). He represented himself at trial and testified in his own behalf. He was sentenced to natural life imprisonment. Defendant appeals, arguing: (1) the State distorted the burden of proof in its rebuttal closing argument; and (2) he was denied a fair trial when the trial court allowed the State to impeach him with his earlier conviction of failure to register under the Sex Offender Registration Act (Act) (730 ILCS 150/1 *et seq.* (West 1998)). We affirm.

G.W., the victim, testified that defendant had sex with her without her consent on March 23, 2002. She was walking home in the early morning hours when defendant, whom she did not

know, attempted to talk to her near 49th Street and Michigan Avenue. He then hit her on the head with a bottle and forced her into the basement of an abandoned building. He pushed her down some stairs. She fell, landing on her tailbone and arm. He had nonconsenual oral and vaginal sex with her repeatedly and held her for four to five hours. When defendant left, the victim went to a pay telephone and called the police. On May 22, 2003, she identified defendant in a police lineup as her attacker.

When called to testify at trial, G.W. admitted she was then in custody for unlawful use of a credit card and that she had earlier convictions for a drug-related offense and forgery. She denied on cross-examination that she had used false social security numbers or birth dates.

Officer Barry Bryant testified that on March 23, 2002, he responded to a call about a criminal sexual assault. He spoke with the victim shortly after 8 a.m. She said she had just been raped. She was upset and crying and her clothes were dirty. Bryant went to the location identified by the victim where he saw an abandoned building.

Caridad Luna, a registered nurse at Provident Hospital, testified that she spoke to the victim around 9:25 a.m. on March 23, 2002. The victim said she was raped "by an unknown person."

Dr. Vietta Johnson testified that she examined the victim on March 25, 2002. The victim had a broken wrist and coccyx or tailbone fracture. Dr. Johnson said "significant energy force has to be delivered for a coccyx fracture to occur."

F.M. testified that she was attacked by defendant in 1999. She said defendant had sex with her repeatedly without her consent in a condemned building near 54th Street and Michigan

Avenue. When cross-examined by defendant, F.M. denied taking drugs with or partying with him. When asked how long she had known defendant, she replied, "I don't know you from nowhere, nowhere on earth, except when you raped me."

Sharon Smith testified that on March 14, 1999, she was working in the emergency room at Provident Hospital when F.M. told her "she was repeatedly sexually assaulted with oral and vaginal penetration." Smith said she gave the police F.M.'s sexual assault evidence collection kit.

Detective Paula Wright testified that on March 14, 1999, she met with F.M. at the hospital. In July 2002, F.M. chose defendant from a lineup. Wright said defendant told her that he did not go into abandoned buildings because he likes clean places and he did not know how his DNA could have been found in F.M.

The parties stipulated that the testimony of nine witnesses would show that the DNA found in G. W.'s vagina and the DNA recovered from F.M. matched defendant's DNA profile.

The trial judge then asked defendant if he was going to testify. The following took place:

"DEFENDANT: If that is the right decision to do after I ask you a question. What would be allowed?

THE COURT: State, what would you seek to offer against the defendant should he choose to testify ***?

MR. BUNTINAS [assistant State's Attorney]: We seek to admit his conviction for violation of the Sex Offender Registration Act, case number 99 CR 6469, in which he pled guilty on May 11 of 1999 and received 18 months [in prison] ***.

THE COURT: Okay. Do you want to say anything about that Mr. Barner, and why that shouldn't be admitted if you choose to testify?

THE DEFENDANT: Yeah, because it has nothing to do with truthfulness and it tells the jury I have a prior sexual conviction.

THE COURT: The mere fact impeachment [method] is found to be not appropriate. *** But in this particular instance–let me see. It's a tough one. ***

Illinois does not authorize the mere fact impeachment of prior convictions under which the jury is informed the defendant is previously convicted of a felony but is not told the nature of that conviction. That is People [v]. Atkinson[, 186 Ill. 2d 450, 457-58, 713 N.E.2d 532 (1999)]. The court held the mere fact method of depriving the jury of knowledge of the nature of past convictions undermines the Montgomery rule [People v. Montgomery, 47 Ill. 2d 510, 268 N.E.2d 695 (1971)] and inhibits the jury's evaluation of credibility. And it goes on to say that in the absence of any evidence of the prior conviction, there is potential danger the jury would speculate [that] the defendant was previously convicted of a more serious crime. See also People [v]. Cox[,] 195 Ill. 2d 378[, 748 N.E.2d 166 (2001)].

The trial court does not have discretion to use the mere fact method. *** [T]he question is whether the conviction comes in or it does not come in. And I think that using the balancing test that is called for by the appropriate case law that when *** you, the defendant, choose to testify, the State has the right to establish a prior conviction which occurred during the appropriate time period. Clearly

1999 is within the appropriate time period and I find that the evidence and the prior conviction that the State would seek to offer, that evidence has sufficient probative value to outweigh any prejudice that it might cause for it to be admitted against you. So I am going to allow the State to offer that prior conviction for violation of the Sex Offender Registration Act. So does that mean you are or are not going to testify, Mr. Barner?

MR. SMITH [counsel appointed to assist *pro se* defendant]: Judge, could we have two minutes to discuss this? I can explain to him what it means.

THE COURT: Okay. I think he knows what it means.

MR. SMITH: I don't know if he understands the full ramifications, if he doesn't testify that if there is error, it's waived. If he does testify, it is error. The Court's decision if it is in error, it's not waived. I don't think he quite understands what that ramification is. If I could have a minute to explain it to him.

THE COURT: Fine. ***

* * *

THE DEFENDANT: Yes, I want to testify definitely."

Defendant testified in narrative form. He said the victim approached him on the street and asked if he was dating. He and the victim then went to a housing project where defendant bought drugs. The victim asked defendant if she could get high with him. She placed the drugs in her vagina to avoid detection by the police. They went to the basement of a building where they used the drugs. The victim then said she needed more drugs and would "take care of [him]" in

exchange for the drugs. He gave her the drugs and she performed oral and vaginal sex with him. Defendant then fell asleep. He was awakened by the sound of footsteps and saw the victim running upstairs with his drugs. She fell down the stairs. Defendant retrieved the drugs and helped up the victim. She then left the basement. Defendant said he had met the victim many times before but this was the first time they had gotten high together.

The court then admitted a certified copy of defendant's 1999 conviction for failure to register as a sex offender.

Defendant in his closing argument said he had consensual sex with the victim. He argued that after G.W. testified against him, a warrant for her arrest when she "jumped bond" had been "cleared up in one day." Assistant State's Attorney Buntinas objected. The trial judge sustained the objection, saying " No evidence of that." Defendant claimed that the State's witnesses said only what the victim told them to say. He said the witnesses "are motivated by getting their needs taken care of." He acknowledged that the State's burden of proof was "beyond a reasonable doubt" but later argued "[t]here is a *shadow* of a doubt here." (Emphasis added.) The court sustained the State's objection to defendant's reference to "a shadow of a doubt."

The State argued in its rebuttal closing argument, "The defendant talks about reasonable doubt. *** That most certainly is the burden of proof in this case. *** [Is that] something [new] that was created for him? The burden of proof in criminal cases for over 100 years[;] it's a burden of proof in each case in this courtroom. *** The [b]urden of proof is beyond a reasonable doubt." The State also contradicted defendant's claim that G.W. testified in exchange for the withdrawal of a warrant: "We are not here because of a conspiracy. We are here because

he sexually assaults women."

In instructing the jury, the judge said, "Evidence of the defendant's previous conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged."

The jury found defendant guilty of aggravated criminal sexual assault. The mittimus shows defendant was convicted of four counts of the offense which were merged into two counts. Defendant received a mandatory sentence of natural life in prison as a habitual criminal. 730 ILCS 5/5-8-1(a)(2) (West 1998).

Defendant first argues on appeal that the State distorted the burden of proof in its closing argument and mischaracterized his defense as a conspiracy theory in its closing argument. The State contends that both arguments are waived for failure to object at trial and allege the errors in a posttrial motion. People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). Defendant urges review under the "plain error" exception to the waiver rule. This exception may be invoked where "the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him" or "that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." People v. Herron, 215 Ill. 2d 167, 187, 830 N.E.2d 467 (2005). The plain-error exception applies only if an error has occurred. Herron, 215 Ill. 2d at 184.

Here, no error occurred. The State is entitled to make comments in rebuttal closing arguments that were invited by or mainly in response to the defendant's closing arguments. People v. Caffey, 205 Ill. 2d 52, 131, 792 N.E.2d 1163 (2001). The prosecutor stated that the

7

burden of proof was "beyond a reasonable doubt" after defendant had stated that there was a "shadow of a doubt" as to his guilt. The prosecutor also responded to defendant's inference that there was collusion–a conspiracy–in which the State withdrew a warrant for the victim's arrest in exchange for her testimony against defendant. The trial judge noted in sustaining the prosecutor's objection to this argument that there was no evidence to suggest that the State obtained the victim's testimony in exchange for the favorable disposition of criminal matters against her. Defendant's argument was speculation. The State was entitled to make the comments of which defendant complains because they were invited by or in response to defendant's arguments.

Defendant next claims he was denied a fair trial when the court allowed the State to impeach him with evidence of his 1999 conviction of failing to register as a sex offender. He argues that the State used his conviction of failure to register to "bootstrap" an earlier sex conviction that would have been inadmissible as impeachment under the 10-year time limitation in Montgomery. See Montgomery, 47 Ill. 2d at 516 (evidence of a conviction cannot be admitted if more than 10 years has passed since the witness was convicted or released from confinement).

We note in passing that while this case concerns the use of earlier crimes evidence as impeachment, our supreme court has identified a constitutional means to admit substantively an earlier sex crime to show propensity. See People v. Donoho, 204 Ill. 2d 159, 176, 788 N.E.2d (2003). Section 115-7.3(b) of the Code of Criminal Procedure of 1963 (Code) provides that where a defendant is accused of certain sex offenses, including aggravated criminal sexual assault, evidence of an earlier sex offense "may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.3(b) (West 1998)). The court must weigh the "probative value"

8

against the possibility of "undue prejudice" by considering: "(1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 1998). "[T]he legislature enacted section 115-7.3 to enable courts to admit evidence of other crimes to show defendant's propensity to commit sex offenses if the requirements of section 115-7.3 are met." Donoho, 204 Ill. 2d at 176. A trial court's decision to admit other-crimes evidence under section 115-7.3 will not be reversed absent an abuse of discretion. Donoho, 204 Ill. 2d at 182. Neither party here has addressed whether the earlier offense would have been admissible under section 115-7.3 of the Code, and so we turn to the theory of inadmissibility that defendant has presented on appeal.

Defendant argues that the trial court did not conduct a meaningful analysis under Montgomery to determine whether the prejudicial impact of the conviction outweighed its probative value.

Montgomery is the seminal case in Illinois on the admissibility of earlier convictions for the impeachment of a testifying witness. Before Montgomery, a defendant's earlier conviction of "an infamous crime" could be admitted to impeach his testimony. See, for example, People v. Davis, 412 Ill. 391, 402, 107 N.E.2d 607 (1952). The supreme court in Montgomery limited the admission of earlier crimes as impeachment when it found that the defendant's 21-year-old conviction "bore no rational relationship to the defendant's present credibility, and should not have been admitted." Montgomery, 47 Ill. 2d at 511. The court adopted the then-proposed draft of the Federal Rule of Evidence 609. See Montgomery, 47 Ill. 2d at 516; Cox, 195 Ill. 2d at 383.

9

Evidence of a past conviction could be admitted to attack the credibility of a witness, " 'but only if the crime, (1) was punishable by death or imprisonment in excess of one year *** or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.' " Montgomery, 47 Ill. 2d at 516, quoting 51 F.R.D. 391. Evidence of a conviction could not be admitted if more than 10 years had passed since the witness was convicted or released from confinement. Montgomery, 47 Ill. 2d at 516. The third part of the test, balancing the probative value of an earlier conviction with its unfairly prejudicial effect, was considered to be the most important feature of the rule. Montgomery, 47 Ill. 2d at 517. The factors to be considered in the balancing test included the nature of the earlier crimes, the length of the defendant's criminal record, his age and circumstances, whether it was more important for the jury to hear the defendant's version of the facts than to know of his earlier conviction, the nearness or remoteness of the earlier conviction, the defendant's career after the conviction and whether the earlier crime was similar to the one charged. Montgomery, 47 Ill. 2d at 518. The interests of the defendant were to be balanced against the interests of the public. Montgomery, 47 Ill. 2d at 518.

The standard of review set in Montgomery was deferential and remains so today. Montgomery, 47 Ill. 2d at 517; People v. Williams, 173 Ill. 2d 48, 81, 670 N.E.2d 638 (1996); People v. Stewart, 366 Ill. App. 3d 101, 112, 851 N.E.2d 672 (2006). The decision of whether to admit an earlier conviction for testimonial impeachment rests with the sound judicial discretion of the trial court. Montgomery, 47 Ill. 2d at 517. This follows the usual rule that a trial court's

determination on the admissibility of evidence will not be reversed absent an abuse of discretion. People v. Reid, 179 Ill. 2d 297, 313, 688 N.E.2d 1156 (1997). An experienced trial judge is to be credited with the sensitivity needed to balance the interests of a defendant with those of the public. Montgomery, 47 Ill. 2d at 518. A judge abuses his discretion only where his judgment is so arbitrary, fanciful or unreasonable that no reasonable person would take his view. People v. Hall, 195 Ill. 2d 1, 20, 743 N.E.2d 126 (2000).

The conviction at issue here meets the first Montgomery requirement that a conviction must be less than 10 years old to be admissible. Montgomery, 47 Ill. 2d at 516. Defendant was convicted of failure to register as a sex offender in 1999. His trial on the present charge was five years later in 2004.

Montgomery requires that the offense be punishable by one year or more in prison. Montgomery, 47 Ill. 2d at 516. Failure to register as a sex offender is punishable by not less than one year in prison. 730 ILCS 150/10 (West 1998) (failure to register as a sex offender is a Class 4 felony); 730 ILCS 5/5-8-1(a)(3)(7) (West 1998) (a Class 4 felony is punishable by not less than one year and not more than three years in prison). Because this offense meets the punishment requirement in Montgomery, it need not have been a crime of dishonesty or false statement. Montgomery, 47 Ill. 2d at 516; Atkinson, 186 Ill. 2d at 456.

Montgomery requires a balancing test to decide whether the probative value of the earlier conviction would be *substantially* outweighed by the danger of *unfair* prejudice. (Emphasis added.) Montgomery, 47 Ill. 2d at 516. To some extent, all evidence is prejudicial to the opposing party or it would not be material. Thompson v. Petit, 294 Ill. App. 3d 1029, 1036, 691

11

N.E.2d 860 (1998). "Relevant evidence is excludable only if it is *unfairly* prejudicial." (Emphasis in original.) Thompson, 294 Ill. App. 3d at 1036.

An earlier conviction has probative value if it can destroy the defendant's credibility. People v. McKibbins, 96 Ill. 2d 176,186, 449 N.E.2d 821 (1983). If a defendant's credibility is a central issue in a trial where the defendant chooses to testify, the State has the right and obligation to use impeaching evidence to destroy the defendant's credibility. McKibbins, 96 Ill. 2d at 189. See People v. Holmes, 141 Ill. 2d 204, 227, 565 N.E.2d 950 (1990) (the State also has a right to a fair trial). Where the defendant's testimony makes up his entire defense, the avenues for impeaching his credibility are limited and evidence of earlier convictions becomes crucial. Atkinson, 186 Ill. 2d at 461-62. By choosing to testify, a defendant puts his credibility on the line. People v. Ford, 163 Ill. App. 3d 497, 507, 516 N.E.2d 766 (1987). See United States v. Lewis, 626 F.2d 940, 950-51 (D.C. Cir. 1980) ("It is unfair and misleading to a jury, when credibility is an issue, to refuse to admit relevant evidence [under Federal Rule of Evidence 609(a), the template for the rules in Montgomery] that is directly probative on that issue"). Rule 609 ultimately was enacted in a different form, but the proposed rule "has remained the touchstone for admitting evidence of the defendant's prior convictions in Illinois." Cox, 195 Ill. 2d at 383 n.1.

The fact that the past and present offenses are the same or similar does not bar their admissibility as impeachment. The supreme court in People v. Redd, 135 Ill. 2d 252, 326, 553 N.E.2d 316 (1990), found that where the case turned on the defendant's credibility, the admission of the defendant's earlier convictions of rape and attempted murder were allowed as impeachment

at a later trial for the same offenses. In <u>Williams</u>, the supreme court found that the defendant's earlier conviction of aggravated battery was admissible to impeach his credibility at his trial on charges of first degree murder, attempted murder and aggravated battery with a firearm. <u>Williams</u>, 173 Ill. 2d at 80-81. The court rejected the defendant's argument that his earlier conviction should not have been admitted because it suggested to the jury that he had a propensity for violent crime. <u>Williams</u>, 173 Ill. 2d at 80-81, 83. See also <u>Atkinson</u>, 186 Ill. 2d at 463 (the fact that the defendant's earlier burglary conviction was similar to the burglary charge on trial did not require the earlier conviction to be barred).

Our supreme court has held that the admission of a conviction of a crime similar or identical to the one charged does not alter the <u>Montgomery</u> rule. "Our case law interpreting <u>Montgomery</u> suggests that it is the nature of a past conviction, not merely the fact of it, that aids the jury in assessing a witness' credibility. [Citations.] The mere-fact approach undermines the <u>Montgomery</u> rule and *inhibits* the jury's evaluation of a witness' credibility by eliminating the jury's consideration of the nature of the past crime." (Emphasis added.) <u>Atkinson</u>, 186 Ill. 2d at 458.

The Seventh Circuit Court of Appeals, cognizant of <u>Montgomery</u> and required to apply Illinois law, allowed an earlier rape conviction to be introduced to impeach the credibility of a testifying witness in a civil rights case in <u>Campbell v. Greer</u>, 831 F.2d 700, 703 (7th Cir. 1987). "The crime must be named. It always has been where impeachment by a prior conviction has been permitted." <u>Campbell</u>, 831 F.2d at 707. "There is no precedent for withholding the identity of the felony from the jury when using a conviction to impeach a witness's testimony, and we are not minded to create one." <u>Campbell</u>, 831 F.2d at 707. While the court questioned the premise that

13

"felons perjure themselves more often than other, similarly situated witnesses," it concluded that a jury is entitled to know the name of the crime committed by the witness. Campbell, 831 F.2d at 707.

Here, the trial court did not err in allowing the jury to hear of defendant's conviction of failure to register as a sex offender. Even though defendant's failure to register as a sex offender alerted the jury to the fact that he had been convicted earlier of a sex crime, the evidence of his failure to register was admissible as long as the court weighed the prejudice within the context of the Montgomery guidelines.

The prejudicial effect of admitting similar or identical offenses is diminished where, as here, the jury receives a limiting instruction on its use of the earlier conviction. Atkinson, 186 Ill. 2d at 463. See People v. Robinson, 299 Ill. App. 3d 426, 443, 701 N.E.2d 231 (1998) (the trial judge properly admitted the earlier theft and burglary convictions of a defendant charged with robbery and theft by conducting the Montgomery balancing test and admonishing the jury). See Illinois Pattern Jury Instructions, Criminal, No. 3.13 (3d ed. 1992) ("Evidence of a defendant's previous conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged"). See also People v. Pruitt, 165 Ill. App. 3d 947, 953, 520 N.E.2d 867 (1988) (an earlier conviction of a similar crime was misused when the State admonished the jury in its rebuttal closing argument that the earlier conviction was to be considered only for impeachment, causing the jury to focus on the earlier conviction and conclude that the defendant had repeated the crime).

14

Here, the record and our extended excerpt from the trial shows that the trial judge understood and followed Montgomery. The judge mentioned Montgomery and its progeny, Atkinson and Cox. The judge announced his ruling, saying, "[c]learly 1999 is within the appropriate time period" and "[the] evidence has sufficient probative value to outweigh any prejudice that it might cause for it to be admitted." Even where a judge does not articulate each specific factor in applying the Montgomery test, other comments in the record can support the conclusion that the judge followed Montgomery. Atkinson, 186 Ill. 2d at 463, citing Williams, 173 Ill. 2d at 83.

This case revisits the long-standing debate on the admissibility of crimes clearly reflecting on the credibility of a witness and crimes that are "more distant." The court in Montgomery challenged the assumption that a person convicted of robbery more than 25 years earlier was more likely to testify falsely today. Montgomery, 47 Ill. 2d at 514. It set parameters on the crimes that could be admitted. The federal case, Luck v. United States, 348 F.2d 763 (D.C. Cir. 1965), was the scaffolding on which Justice Schaefer built Montgomery. The principles in Luck are as sound today as when it was written:

"The trial court is not required to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. [There is] room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the

15

fear of prejudice founded upon a prior conviction. *** There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field.

*** The goal of a criminal trial is the disposition of the charge in accordance with the truth. The possibility of a rehearsal of the defendant's criminal record in a given case, especially if it means that the jury will be left without one version of the truth, may or may not contribute to that objective. The experienced trial judge has a sensitivity in this regard which normally can be relied upon to strike a reasonable balance between the interests of the defendant and of the public." Luck, 348 F.2d at 768-69.

The record here shows that the judge understood and applied the Montgomery test. We defer to the sound judicial discretion of the court in weighing the probative and prejudicial effects of admitting a conviction that would tell the jury of the predicate sex offense.

The judgment of the circuit court is affirmed.

Affirmed.

McBRIDE, P.J., and J. GORDON, J., concur.

16